GAJARSA, Circuit Judge,
concurring.
I join the opinion of the court, but write separately to explain my reasons for doing so. Whether there is a free standing written description requirement pursuant to § 112, ¶ 1 is a matter of statutory interpretation as the majority correctly notes. Maj. Op. at 1342^15. In my judgment, the text of § 112, ¶ 1 is a model of legislative ambiguity. The interpretation of the statute, therefore, is one over which reasonable people can disagree, and indeed, reasonable people have so disagreed for the better part of a decade. See, e.g., Univ. of Rochester v. G.D. Searle & Co., 375 F.3d 1303 (Fed.Cir.2004) (denial of rehearing en banc); Enzo Biochem, Inc. v. Gen-Probe Inc., 323 F.3d 956 (Fed.Cir.2002) (denial of rehearing en banc). While not entirely free from doubt, the majority’s interpretation of § 112, ¶ 1 is reasonable, and for the need to provide some clarity to this otherwise conflicting area of our law, I concur with the majority’s opinion that the statute may be interpreted to set forth an independent written description requirement.
I disagree, however, with those who view an independent written description requirement as a necessity of patent law. This court and the various amici curiae have spent considerable time and resources addressing whether § 112, ¶ 1 provides a distinct written description requirement wholly separate from enablement. Contrary to the representations of the Patent Office and the opinions of members of this court, I do not believe that this issue has a significant, practical impact. See Government Br. at 19 (claiming written description serves an “indispensable role in the administration of the patent system”); Moba, B.V. v. Diamond Automation, Inc., 325 F.3d 1306, 1322 (Rader, J., concurring) (“By making written description a free-standing disclosure doctrine, this court produces numerous unintended and deleterious consequences.”). Empirical evidence demonstrates that outside the priority context the written description doctrine seldom serves as a separate vehicle for invalidating claims. See, e.g., Dennis Crouch, An Empirical Study of the Role of the Written Description Requirement in Patent Prosecution 12 (Univ. of Mo. Sch. Of Law Legal Studies Research Paper No.2010-06, 2000), available at http://ssrn.com/ abstract=1554949 (analyzing 2858 Board of Patent Appeals and Interference patent opinions decided between January and June 2009 and.finding “none of the outcomes of those decisions would have been impacted by a hypothetical change that eliminated the written description requirement so long as new matter rejections were still allowed under the same standard available today”); Christopher Holman, Is Lilly Written Description a Paper Tiger?: A Comprehensive Assessment of the Impact of Eli Lilly and its Progeny in the Courts and PTO, 17 Alb. L.J. Sci. & Tech. 1, 26-78 (2007) (analyzing Federal Circuit, district court, and BPAI cases since Regents of the University of California v. Eli Lilly & Co., 119 F.3d 1559 (Fed.Cir.1997), and finding only a small number of cases that invalidated a claim for failure to satisfy the written description requirement).[1]
*1361 The empirical evidence confirms my belief that written description serves little practical purpose as an independent invalidity device and better serves the goals of the Patent Act when confined to the priority context. As a matter of statutory interpretation, however, we cannot limit the written description only to priority cases, but Congress could establish such a limit by statute. Section 112, ¶ 1’s enablement requirement is a more than adequate vehicle for invalidating claims that are broader than their disclosure. See J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred, Int’l, Inc., 534 U.S. 124, 142, 122 S.Ct. 593, 151 L.Ed.2d 508 (2001) (identifying an enabling disclosure as the quid pro quo of the patent monopoly); Martek Biosciences Corp. v. Nutrinova, Inc., 579 F.3d 1363, 1378 (Fed.Cir.2009) (“To meet the enablement requirement, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation.”). Confining written description to the priority context would provide greater clarity to district courts and practitioners, both of whom are currently left to trudge through a thicket of written description jurisprudence that provides no conclusive answers and encourages a shotgun approach to litigation. Yet, this thicket is the result of our best efforts to construe an ambiguous statute; only Congress wields the machete to clear it.
Accordingly, because the majority’s opinion provides a reasonable interpretation of a less than clear statute, I join the opinion.

. More specifically, Holman finds that (1) written description challenges to a patent's validity rarely arise, and (2) when they do occur, very few patents have been invalidated, *1361 whether by the Federal Circuit, district courts or the BPAI. According to Holman, over a nine-year period, the Federal Circuit rejected written description-based challenges on six occasions, while it upheld such challenges in only four cases. During the same period of time and excluding those decisions addressed by the Federal Circuit, district courts rejected written description challenges on ten occasions, and upheld them once. Finally, the BPAI rejected written description challenges on twenty-two occasions, while upholding them only nine times. Id. at 26-78.
Furthermore, Holman discusses each of the cases before the courts and the BPAI where a challenge under the written description requirement was upheld and argues that in most cases the patent would have also been invalid for lack of enablement or that the court or BPAI substantially blurred the line between enablement and written description. Id. at 78-79.